Judgment rendered January 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,470-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

ANGELLA ROCHELL                             Appellant
MARSHALL

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 379,125

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By:  Peggy J. Sullivan

JAMES E. STEWART, SR.                   Counsel for Appellee
District Attorney

SAMUEL S. CRICHTON
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before PITMAN, STEPHENS, and MARCOTTE, JJ.

**PITMAN, C. J.**

Defendant Angella Rochell Marshall was found guilty of vehicular homicide and was sentenced to 15 years at hard labor, 5 years of which were to be served without benefit of probation, parole, or suspension of sentence; a fine of $10,000; and a requirement that she take a substance abuse course and a driver improvement course. She appeals her conviction and sentence. For the following reasons, we affirm.

## FACTS

On October 10, 2020, near midnight, Defendant was driving on West College Street in Shreveport. She ran a stop sign at the corner of West College and Jewella Avenue and struck a 2020 Chevrolet pickup truck driven by Kerrick Walker, a licensed CDL (Commercial Driver's License) driver who was driving north on Jewella. The force of the initial impact spun Walker's truck into the southbound lane of Jewella where he was struck again by a car driven by Lenard Pierce. The second collision caused Walker's truck to roll over the top of Pierce's car. Walker was unconscious for a few moments. Pierce was killed in the accident.

Defendant showed signs of intoxication and a breathalyzer was performed approximately two hours after the accident. The result was a blood alcohol concentration ("BAC") of .184, more than twice the legal limit. Walker was also tested, and his BAC was 0.0. The damage to all vehicles was extensive, and Pierce's body had to be removed from his vehicle with the jaws of life.

Defendant was charged with vehicular homicide, a violation of La. R.S. 14:32.1, in that she caused the death of Pierce while she was engaged in the operation of, or in actual physical control of, any motor vehicle

whether or not she had the intent to cause death or great bodily harm and had a blood alcohol concentration of 0.10 or more.

A jury trial was held October 25, 2022. Walker testified that he was driving on Jewella, saw the headlights of Defendant's car coming toward him and knew an accident was going to occur. He described being hit, being knocked into the southbound lane, being struck by Pierce's car and his truck rolling over. He stated that he passed out briefly, but when he came back to consciousness, he saw people running away from Pierce's car. He testified that he did not know a person was still in the vehicle because it appeared empty. He stated that he spoke to Defendant who said she had been on the phone fighting with her boyfriend when she ran the stop sign. He stated that she was alone in her car except for her dog. Family members met him and took him to the police station. He went to the hospital to be checked the next day.

Officer A. Visciotti of the Shreveport Police Department patrol division responded to the scene of the accident. He observed all three heavily damaged vehicles in the southbound lanes of Jewella. He stated that at that intersection, there were no traffic control devices on Jewella, but there were stop signs on both sides of West College prior to entering Jewella. He testified that Walker's truck was initially struck on the left, or driver's side, which caused it to veer into the southbound lane of Jewella. Pierce's car's windshield was completely flat and crushed in on top of the driver. He checked Pierce's body for a pulse but found none. The Shreveport Fire Department responded and pronounced Pierce dead at the scene. Pierce's death certificate and coroner's report were introduced into evidence and showed blunt force injury caused by a motor vehicle crash to

2

be the cause of death. Pierce's autopsy report also stated that postmortem toxicology revealed the presence of different forms of THC, which is associated with marijuana consumption. The manner of death is stated as an accident.

Ofc. Visciotti took the written statements of Defendant and Walker at the scene. They were admitted into evidence at the trial. Defendant's statement is almost illegible, but the last line states, "[ j]ust thank God everyone was okay." He testified that he took Defendant to a controlled area to conduct sobriety tests because the accident scene was already very large and it was dark and raining. She made another statement and admitted to driving her car and hitting another vehicle. He stated that Defendant's speech was slurred and that she had trouble answering questions. She also seemed very detached from the situation, saying she was glad everyone was okay, when in fact, a deceased person was right in front of her. According to Ofc. Visciotti, she was more concerned about her dog than she was about the scene of the accident.

Corporal Corey Sullivan, Shreveport Police Department, testified that on the night of the accident he was working on the DWI (Driving While Intoxicated) taskforce and that he was trained to administer field sobriety tests and was certified in the Intoxilyzer 9000. Cpl. Sullivan administered the Intoxilyzer 9000 test to both Walker and Defendant in a room at the station equipped with a video camera. The Chemical Rights Form was given to both of them, and Defendant also received a voluntary submission form after her rights were read to her. Defendant was unable to sign her form because it was an electronic form but stated she was willing to sign

3

had she been able to do so. Cpl. Sullivan testified that Walker had no alcohol in his system, but Defendant's BAC was .184.

Cpl. Sullivan further testified that the legal limit for alcohol consumption is .08 and that Defendant's was more than double the legal limit. The presumption was that Defendant was intoxicated and unable to operate a motor vehicle. He stated that over time, the BAC will decrease if the person has not consumed any more alcohol and that the test was administered to Defendant two hours after the accident. He testified that he did not perform the tests usually performed in the field, i.e., the one-leg stand test, the horizontal gaze nystagmus test and others, because Defendant had been in a very serious car accident and might have been injured, which would have affected her ability to take the test. He stated that the breathalyzer test was adequate to prove that she was intoxicated at the time of the accident. The state rested, and the defense did not present any evidence.

A unanimous jury returned a verdict of guilty as charged of vehicular homicide. Sentencing was held on November 28, 2022. Defendant filed a motion for a new trial and a motion for judgment notwithstanding the verdict. The trial court denied both motions at the sentencing hearing, and Defendant waived the delay provided by law for sentencing to occur.

The trial court noted the penalty for vehicular homicide under La. R.S. 14:32.1. It considered La. C. Cr. P. art. 894.1 and mitigating factors. It offered Defendant the opportunity to have a hearing on whether she could pay the fine to be imposed, but she waived this right and stated that she could pay the fine over time. She signed a waiver of financial declaration hearing. The trial court sentenced her to 15 years at hard labor, 5 of which

were to be served without benefits. It fined her $10,000 and court costs, which would be paid through inmate banking. She was ordered to participate in a court-approved substance abuse program and a driver improvement program when she was finished serving her sentence. She filed a motion to reconsider sentence, which was denied.

Defendant appeals her conviction and sentence.

## DISCUSSION

*Sufficiency of the Evidence*

Defendant argues the state failed to carry its burden of proof beyond a reasonable doubt that she was guilty of vehicular homicide in that it failed to establish a causal link between her "condition" and the crash as required by statute. She admits she was driving the car and that she hit Walker's truck, causing him to hit Pierce. She admits her BAC was .184, but she denies that she was the cause of Pierce's death. She asserts that a link must be shown between intoxication and the death; and because no causation was shown, the evidence presented was insufficient to find her guilty as charged. She argues that the state failed to exclude every reasonable hypothesis of innocence, including the "reasonable hypothesis" that the victim's own impairment contributed to the accident.

Defendant also argues that the state relied on circumstantial evidence to prove her guilt, i.e., that her BAC was .184. She contends that when the state relies on circumstantial evidence to establish the existence of an essential element of a crime, it must exclude every reasonable hypothesis of innocence. She contends that it is a reasonable hypothesis that Pierce's own inebriation from marijuana, which was found in the toxicology report of his autopsy, was a cause of his death. She claims that this was not a subject

5

that was brought up at trial other than in the autopsy report submitted in conjunction with the state's case. For these reasons, she argues that the state failed to meet its burden of proof.

The state argues that the blood alcohol results and Defendant's behavioral manifestations provided sufficient evidence to sustain the conviction. The state asserts that, clearly, Defendant's BAC of .184, more than twice the legal limit, was a contributing cause of the accident and, thus, caused Pierce's death. It argues that Defendant's BAC is presumptive evidence of impairment that contributed to Pierce's death and points out that other aspects of her demeanor at the scene, and later at the station, indicated that her impairment was the cause of the accident. She had slurred speech, could not write legibly, was unaware that she had killed someone and was detached from the situation. It contends that proof of her BAC and associated behavior should be considered sufficient to meet the elements of the statute.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). This standard, now legislatively embodied in La. C. Cr. P. art. 821, is applicable in cases involving both direct and circumstantial evidence. *State v. Miller*, 53,356 (La. App. 2 Cir. 4/22/20), 295 So. 3d 443, *writ denied*, 20-00888 (La. 11/24/20), 305 So. 3d 104. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. *Id*.

6

When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *Id.* Where a conviction is based on circumstantial evidence, the evidence "must exclude every reasonable hypothesis of innocence." *Id.*, *quoting* La. R.S. 15:438.

La. R.S. 14:32.1 states in pertinent part as follows:

A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exist and such condition was a contributing factor to the killing:

* * *

(2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

In *State v. Leger*, 17-2084 (La. 6/26/19), 284 So. 3d 609, the court stated:

The plain text of the statute now requires the state to prove four things: 1) the killing of a human being; 2) caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle; 3) a prohibited degree of intoxication; and 4) a link between the intoxication and the killing. Most importantly, the link between the intoxication and the killing does not have to be a "proximate cause," but simply a "contributing factor."

A "proximate cause" is one that directly produces an event and without which the event would not have occurred. By contrast, a "contributing cause" is a factor that - though not the primary cause - plays a part in producing a result. A "factor" is an agent or cause that contributes to a particular result.

(Internal citations omitted.)

7

The evidence presented in this case was sufficient to meet every element of the crime of vehicular homicide. Defendant's BAC was more than twice the legal limit and was established at .184 approximately two hours after the accident took place, presumably during which time it should have typically decreased. Defendant's demeanor at the scene of the accident as reported by the responding officer proved that she was oblivious to the damage she caused when she ran the stop sign, hit Walker and caused his truck to crush the victim's vehicle. It is clear her intoxication was a contributing cause of Pierce's death. Further, it is not a reasonable hypothesis to argue that the presence of THC in Pierce's body at the time of his death was a contributing factor of his demise. For these reasons, this assignment of error is without merit.

*Excessive Sentence*

Defendant argues that the sentence imposed of 15 years' imprisonment at hard labor with the first 5 years being served without benefits, a fine of $10,000, the requirement that she attend a rehabilitation program and a driving improvement program is excessive under the circumstances of the case. She asserts that the trial court failed to state the provisions of La. C. Cr. P. art. 894.1 that it considered and noted it cited the loss of life as a factor for her harsh sentence. She argued that the loss of life had already been considered as an element of the crime and should not have been reconsidered as a factor during sentencing. She also points out that mitigating factors were not discussed in great detail when sentencing occurred.

Defendant also argues that had she known she was going to be fined $10,000 when the statute calls for a fine of not less than $2,000 and not

more than $15,000, she would not have waived her right to a hearing to determine her ability to pay over time. She complains that the trial court had not specifically advised her the fine would be so substantial when it questioned her about her ability to pay and whether she wanted the hearing. She contends that the imposition of a substantial fine in conjunction with a lengthy hard labor sentence was not appropriate. She states that the purpose of financial obligations is to hold an offender accountable for his actions, but any financial obligation in excess of what an offender can reasonably pay undermines the primary purpose of the justice system. For these reasons, Defendant argues the sentence imposed was excessive and shocks the conscience.

The state argues that the sentence imposed is not excessive as it falls within the statutory range imposed in La. R.S. 14:32.1(B) and that the record clearly shows an adequate factual basis for the sentence. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines. It is not required to assign any particular weight to any specific matters at sentencing and is given broad discretion in sentencing matters.

La. R.S. 14:32.1(B) contains the penalty for vehicular homicide and states in pertinent part:

> Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years. At least three years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. If the operator's blood alcohol concentration is 0.15 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood, then at least five years of the sentence

of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence.

Appellate review of sentences for excessiveness is a two-pronged inquiry. *State v. Benavides*, 54,265 (La. App. 2 Cir. 3/9/22), 336 So. 3d 114. First, the record must show that the court complied with La. C. Cr. P. art. 894.1. The court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. *State v. Benavides*, *supra*. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. *Id*. No sentencing factor is accorded greater weight by statute than any other factor. *Id*.

The second prong is constitutional excessiveness. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. *State v. Benavides*, *supra*. A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. *Id*. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. *Id*. The issue is not whether some other sentence might have been more appropriate, but whether the district court abused its discretion. *Id*.

The purpose of imposing financial obligations on an offender who is convicted of a criminal offense is to hold the offender accountable for his actions, to compensate victims for any actual pecuniary loss or costs

incurred in connection with a criminal prosecution, to defray the cost of court operations, and to provide services to offenders and victims. La. C. Cr. P. art. 875.1(A). These financial obligations should not create a barrier to the offender's successful rehabilitation and reentry into society. *Id.* Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system, which is to deter criminal behavior and encourage compliance with the law. *Id.*

La. C. Cr. P. art. 875.1(C)(1) provides that the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents. However, the defendant or the court may waive the judicial determination of a substantial financial hardship required by the provisions of the article. La. C. Cr. P. art. 875.1(C)(2).

In this case, the trial court reviewed the sentencing range provided in the statute, addressed the factors to be considered under La. C. Cr. P. art. 894.1 and found Defendant in need of correctional treatment. It also found that a lesser sentence would deprecate the seriousness of her crime. The trial court considered mitigating factors but found that the crime warranted imposition of imprisonment in the midrange of 15 years.

The imposition of the fine of $10,000 was also provided by statute. Defendant was given the opportunity to ask for a hearing on the hardship of paying the fine, but she waived that right, which was also provided by statute. There is nothing to indicate the trial court abused its discretion in the imposition of the sentence, and it is not constitutionally excessive.

For the foregoing reasons, this assignment of error is without merit.

11

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant Angella Rochell Marshall are hereby affirmed.

**AFFIRMED**.